## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| MIAMI VALLEY MOBILE HEALTH SERVICES, INC., et al., | : |
| | : Case No. 3:11-cv-158 |
| Plaintiffs, | |
| | : |
| vs. | |
| | : JUDGE WALTER HERBERT RICE |
| EXAMONE WORLDWIDE, INC., | |
| | : |
| Defendant | |

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS (DOC. #9)

Plaintiffs, Miami Valley Mobile Health Services, Inc. ("MVMHS"), and its

President, Joy M. Brush, filed suit against ExamOne Worldwide, Inc. ("ExamOne"),

successor-in-interest to World Wide Health Services, Inc. ("WWHS"), seeking

declaratory judgment and monetary damages. Plaintiffs' claims arise out of a

licensing agreement and an agency agreement. The Court's jurisdiction is based on

diversity of citizenship. *See* 28 U.S.C. § 1332(a).

This matter is currently before the Court on Defendant's Motion to Dismiss

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted. Doc. #9. For the reasons set forth below, that

motion is sustained in part and overruled in part.

## I.    Background and Procedural History

Defendant, ExamOne, coordinates paramedical examinations for the insurance industry. It is a Pennsylvania corporation with a principal place of business in Kansas. Compl. ¶¶7-8. When an individual applies for life insurance or health insurance, ExamOne, through its licensed agents, conducts the necessary medical examination. Compl. ¶13. Plaintiff MVMHS, formerly known as World Wide Health Services/Miami Valley, Inc. ("WWHS/MVI"), was one of ExamOne's licensed agents.

The origins of the relationship between MVMHS and ExamOne date back to 1989. On August 10, 1989, Shirley Mullins entered into a "License Agreement" with WWHS, ExamOne's predecessor. She was granted an exclusive license to conduct paramedical examinations on behalf of WWHS in 16 counties in northwest Ohio (the "licensed area"). Ex. 1 to Compl. On October 25, 1991, pursuant to the terms of a separate Agency Agreement, this territory was expanded to include 8 more counties in southwest Ohio (the "Cincinnati region"). Compl. ¶¶22-23.

In March of 1995, Mullins sold her business to Plaintiff Joy Brush and WWHS/MVI, now known as MVMHS. Pursuant to the terms of an Asset Purchase Agreement, Mullins assigned the License Agreement and other agreements to WWHS/MVI. Compl. ¶25. On November 28,1995, WWHS entered into an Agency Agreement with WWHS/MVI whereby WWHS/MVI would provide services in the Cincinnati region. Compl. ¶26; Ex. 3 to Compl.

2

According to the Complaint, early in 2000, WWHS was bought out by ExamOne. Shortly thereafter, ExamOne began to open its own corporate offices to perform paramedical examinations, including offices in the licensed area and the Cincinnati region. Compl. ¶41. Plaintiffs allege that ExamOne began stealing clients through the use of centralized scheduling systems. They further allege that, by late 2005 or 2006, ExamOne began using a new "zip code" model to chip away Plaintiffs' licensed territory. Compl. ¶¶42-46. According to Plaintiffs, by June of 2007, they believed that ExamOne was also stealing confidential trade secrets, including client contact information, and making it difficult for Plaintiffs' clients to schedule examinations. Compl. ¶¶47-48.

On February 8, 2011, ExamOne unilaterally terminated the November 28, 1995 Agency Agreement, effective May 11, 2011, allegedly because Plaintiffs had made unauthorized use of a client's trademark in an email message. Compl. ¶¶49-54.

Plaintiffs then filed suit against ExamOne. Plaintiffs seek a declaration that the August 10,1989, License Agreement and other related agreements remain valid and enforceable. They also seek compensatory and punitive damages for breach of the License Agreement, breach of the Agency Agreement, breach of implied contract, promissory estoppel, breach of fiduciary duty, unjust enrichment, misappropriation of trade secrets, tortious interference with business relationships, tortious interference with contractual relationships, and conversion.

3

Defendant has moved to dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper. *Little v. UNUMProvident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

4

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

5

between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer*, 416 U.S. at 236; *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004); *Mayer*, 988 F.2d at 638. The court will indulge all reasonable inferences that might be drawn from the pleading. *See Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000); *Lewis*, 135 F.3d at 405.

## III.    Analysis

Defendant argues that Plaintiffs' claims should be dismissed because they are time-barred. In the alternative, Defendant argues that many of Plaintiffs' claims should be dismissed as duplicative of the breach of contract claims, because they are preempted, or because Plaintiffs have otherwise failed to state a claim upon which relief may be granted.

### A.    Statute of Limitations

In its Motion to Dismiss, Defendant first argues that, under Pennsylvania law, Plaintiffs' claims of breach of contract, breach of implied contract, promissory

6

estoppel, breach of fiduciary duty, misappropriation of trade secrets, tortious interference, and conversion are all time-barred.

### 1. Governing Law

The threshold issue concerning the statute of limitations defense is which state's law applies. Defendant maintains that Pennsylvania law applies; Plaintiffs maintain that Ohio law applies. It makes a difference because, as a general rule, Pennsylvania has much shorter statutes of limitations. If Pennsylvania law governs, many of Plaintiffs' claims will be time-barred.

The parties agree that a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Ohio law, contractual choice-of-law provisions are valid and enforceable. *See Schulke Radio Prod. Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 438-39, 453 N.E.2d 683, 686 (Ohio 1983). Although the 1989 License Agreement contains a choice-of-law provision, the parties disagree as to its interpretation. The parties also disagree about whether the 1995 Agency Agreement contains any choice-of-law provision, whatsoever.

For purposes of determining the correct statute of limitations for each of Plaintiffs' claims, the Court need not resolve these disputes concerning the choice-of-law provisions just yet. As the Sixth Circuit explained in *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998):

7

contractual choice-of-law provisions incorporate only substantive law, not procedural provisions such as statutes of limitations. Absent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract.

*Id.* at 437 (internal citation omitted).

The contracts at issue contain no express statement that the parties

intended to be bound by the statutes of limitations of any particular state.

Therefore, the Court must apply Ohio's statutes of limitations to Plaintiffs' claims

unless Ohio's borrowing statute applies. A borrowing statute "is a legislative

exception from the general rule that the forum always applies its statute of

limitation." *Combs v. International Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). It

is meant to prevent forum shopping by a plaintiff whose claims have otherwise

expired. Ohio's borrowing statute reads as follows:

No civil action that is based upon a cause of action that accrued in any other state. . . may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state . . . has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03(B).

Defendant argues that this borrowing statute applies because Plaintiffs'

claims accrued in Pennsylvania. The Court rejects this argument. Although case

law concerning *where* a cause of action accrues is quite sparse, the Sixth Circuit

has explained that the questions of *when* and *where* a cause of action accrues are

"inextricably intertwined." *CMACO Auto. Sys., Inc. v. Wanxiang*, 589 F.3d 235,

8

243 n.7 (6th Cir. 2009).

For the reasons set forth more fully below, the Court finds that Plaintiffs' contract, quasi-contract and tort claims accrued in Ohio, not in Pennsylvania. The territory for which Plaintiffs were granted an exclusive license is located in Ohio, and the clients that Defendant allegedly stole from Plaintiffs are located in Ohio. The alleged wrongdoing took place in Ohio, and the damages were felt in Ohio.[1]

In summary, because the borrowing statute does not apply, Plaintiffs' claims are subject to Ohio's statutes of limitations. The Court must next determine whether the causes of action contained in the Complaint, which was filed on May 11, 2011, are timely under Ohio law.

## 2. Contract and Quasi-Contract Claims

Plaintiffs' Second Claim for Relief alleges a breach of the License Agreement, and the Third Claim for Relief alleges a breach of the Agency Agreement. Under Ohio law, actions for breach of a written contract must be filed within 15 years of the date of accrual. *See* Ohio Rev. Code § 2305.06. All of the alleged breaches took place after 2000, when ExamOne bought out WWHS, Inc., well within the 15-year statute of limitations. The breach of contract claims are therefore timely filed.

---

[1] For the same reason, the Court rejects Defendant's alternative argument that because Pennsylvania has a more significant relationship to the parties and the occurrence, Pennsylvania's statutes of limitations should apply.

9

The Fourth Claim for Relief alleges breach of implied contract, the Fifth Claim for Relief alleges promissory estoppel, and the Seventh Claim for Relief alleges unjust enrichment. Under Ohio law, these claims are subject to a 6-year statute of limitations. *See* Ohio Rev. Code § 2305.07 (governing implied contracts); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp.2d 899, 914 (S.D. Ohio 2009) (holding that promissory estoppel claims are subject to 6-year statute of limitations); *Desai v. Franklin* (2008), 177 Ohio App.3d 679, 2008-Ohio-3957, 895 N.E.2d 875, at ¶ 15 (holding that claims of unjust enrichment are subject to 6-year statute of limitations).

If these claims accrued prior to May 11, 2005, they are time-barred. Actions for breach of an implied contract accrue when "the plaintiff discovers the failure to perform as agreed." *Whittle v. Procter & Gamble*, 589 F. Supp.2d 944, 949 (S.D. Ohio 2008) (construing Ohio law). Actions for promissory estoppel accrue when the wrongful act is committed, *i.e.*, when the promise is broken. *See Ohio Envtl. Dev. Ltd. P'ship v. Ohio Envtl. Protection Agency*, 10th Dist. No. 09AP-683, 2010-Ohio-414, at ¶ 17 (citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87, 447 N.E.2d 727, 730 (Ohio 1983)). Actions for unjust enrichment accrue "when the last unjust retention of the benefit occurs." *Desai*, 2008-Ohio-3957, at ¶ 20.

Plaintiffs admit that, at this point, they do not know exactly when Defendant began to steal their clientele. Doc. #12, at 9. The Complaint alleges, however,

10

that "by late 2005 or 2006, ExamOne began to use a 'zip code' model . . . to systematically chip away" at Plaintiffs' territory. Compl. ¶¶ 44-45. Assuming that this is when the claims accrued, it would appear that they are timely filed.

It may well be that, after conducting some discovery, the parties will determine that the actual date of accrual is earlier and that these claims are, in fact, time-barred. Nevertheless, because the face of the Complaint does not conclusively establish that the claims of breach of implied contract, promissory estoppel, and unjust enrichment are time-barred, the Court cannot, at this stage of the litigation, dismiss Plaintiffs' claims on statute of limitations grounds. *See Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379, 433 N.E.2d 147, 150 (Ohio 1982) ("A motion to dismiss a complaint under Civ.R. 12(B) which is based upon the statute of limitations is erroneously granted where the complaint does not conclusively show on its face the action is barred by the statute of limitations."). The Court therefore overrules Defendant's motion to dismiss the Fourth, Fifth and Seventh Claims for Relief as time-barred.

### 3. Tort Claims

Defendant also argues that the following tort claims are time-barred: (A) breach of fiduciary duty (Sixth Claim for Relief); (B) misappropriation of trade secrets (Eighth Claim for Relief); (C) tortious interference with business relationships (Ninth Claim for Relief); (D) tortious interference with contractual relationships (Tenth Claim for Relief); and (E) conversion (Eleventh Claim for Relief).

11

Under Ohio law, these tort claims must be filed within 4 years after accrual. *See* Ohio Rev. Code § 1333.66 (misappropriation); Ohio Rev. Code § 2305.09 (other tort claims). Therefore, any tort claims that accrued prior to May 11, 2007, are time-barred. A tort claim generally accrues at the time the wrongful act is committed. *O'Stricker*, 4 Ohio St.3d at 87, 447 N.E.2d at 730. However, Plaintiffs' claims of conversion and misappropriation do not accrue until the wrongdoing is discovered. *See* Ohio Rev. Code § 2305.09 (governing claims for wrongful taking of personal property); Ohio Rev. Code § 1333.66 (governing misappropriation claims).

According to the allegations in the Complaint, many of the alleged wrongful acts took place prior to May 11, 2007. For example, Plaintiffs allege that by late 2005 or 2006, Defendant was using the zip code model to chip away at Plaintiffs' territory. Compl. ¶¶ 44-45. At first glance, these claims appear to be time-barred under Ohio law.

Nevertheless, Plaintiffs also cite to some discrete acts of wrongdoing that may have taken place after May 11, 2007. For example, Plaintiffs maintain that "[b]y June of 2007," they believed that Defendant had secured contact information for Plaintiffs' clients, and many of those clients began having difficulty scheduling examinations within Plaintiffs' licensed territory. Compl. ¶¶ 47-48. As late as February of 2011, Plaintiffs learned that, because of a new arrangement with Defendant, one client was no longer able to directly call Plaintiffs to schedule

12

examinations. Compl. ¶ 49.

Therefore, while it appears that many of Plaintiffs' tort claims may be time-barred, again the Court cannot conclusively make that determination from the face of the Complaint. Dismissal of these claims on statute of limitations grounds is therefore not warranted at this stage of the litigation. *See Velotta*, 69 Ohio St.2d at 379, 433 N.E.2d at 150.

## B. Alternative Arguments for Dismissal

Defendant maintains that even if the claims were timely filed, many of them nevertheless fail as a matter of law because: (1) they are duplicative of, and precluded by, the breach of contract claims; (2) the tortious interference and conversion claims are preempted; and (3) Plaintiffs have failed to adequately plead claims of promissory estoppel and tortious interference. Before turning to the these alternative arguments, the Court must address the question of whether Pennsylvania law or Ohio law governs the *substance* of these claims.

### 1. Choice of Law

#### a. Contractual Choice-of-Law Provisions

As noted above, the Court must apply Ohio's choice-of-law rules to Plaintiffs' claims. *See Klaxon*, 313 U.S. at 496. Under Ohio law, contractual choice-of-law provisions are valid and enforceable. *Schulke*, 6 Ohio St.3d at 438-39, 453 N.E.2d at 686. They will be applied unless the chosen state has no substantial relationship to the parties or the transaction, or the law of the chosen

13

state is contrary to a fundamental policy of a state with a materially greater interest in the determination of the issue. *Id.* (citing *Restatement (2d) of Conflict of Laws*, § 187) (1971)).

The parties agree that the 1989 License Agreement contains a choice-of-law provision. However, Defendant interprets it to mandate the application of Pennsylvania law, and Plaintiffs interpret it to mandate the application of Ohio law. Defendant also argues that the 1995 Agency Agreement contains a choice-of-law provision dictating the application of Pennsylvania law. Plaintiffs, however, deny that the 1995 Agency Agreement contains any choice-of-law provision, whatsoever.

### i)    1989 License Agreement and Addendum

The "Governing Law" provision of the 1989 License Agreement states, "[t]his Agreement shall be governed and construed in accordance with the laws of the state where action [is] authorized by the terms of this Agreement." Ex. 1 to Compl., at ¶ 17(G). Plaintiffs interpret this provision to mean that because the License Agreement authorized them to "act," *i.e.*, to conduct paramedical exams, in northwest Ohio, Ohio law applies.

Defendant, however, interprets the term "action" quite differently. Defendant cites to the following arbitration provision contained in the License Agreement: "Any dispute between the parties shall be submitted to arbitration under the following terms: . . . (3) Said arbitration shall be conducted in

14

Philadelphia, Pennsylvania if Licensee moves for arbitration, and in Dayton, Ohio if

Licensor moves for arbitration. . ." Ex. 1 to Compl., at ¶ 12(A)(3).[2] According to

Defendant, because Plaintiffs, as the Licensees, brought this "action,"

Pennsylvania is the "state where action [is] authorized by the terms of this

Agreement" and Pennsylvania law, therefore, governs.

In the Court's view, at first blush, Defendant's interpretation is somewhat

strained. Nevertheless, Defendant points out that the License Agreement also

contains the following provision:

> (E) Conformity with Statutes, Code, Regulations, Ruling, Case Law,
> Etc. Any provision of this Agreement which is on the date of its
> inception or becomes during the effectiveness of said Agreement, in
> conflict with any federal[,] Pennsylvania, or Ohio Statute, or any valid
> regulations or rulings made pursuant there or any federal,
> Pennsylvania, or Ohio Case Law, is hereby amended to conform to the
> minimum requirements of such statute(s), regulation(s), ruling(s), or
> case law, as appropriate.

Ex. 1 to Compl., at ¶17(E). This provision appears to contemplate the application

of either Pennsylvania or Ohio law, depending on the circumstances, thereby

negating Plaintiffs' interpretation that because the licensed territory is in Ohio, Ohio

law must apply.[3]

---

[2] The Court notes that Defendant has not filed a motion to compel
arbitration. It therefore appears that Defendant has waived its right to enforce this
arbitration provision.

[3] Defendant also notes that paragraph 5 of the First Addendum to the 1989
License Agreement states, "[f]or the purpose of determining the adequacy of the
consideration exchanges by the parties the law of the Commonwealth of
Pennsylvania shall govern the provisions of this addendum." Ex. 2 to Compl. As

In the Court's view, the "Governing Law" provision in the 1989 License

Agreement is ambiguous because it is susceptible to two reasonable

interpretations. Under Ohio law, when a contract provision is ambiguous, the

Court may resort to extrinsic evidence to determine what the parties intended at

the time they entered into the contract. If extrinsic evidence does not resolve the

ambiguity, then the ambiguous language is strictly construed against the drafter,

particularly if the parties have unequal bargaining power. *See Cline v. Rose*, 96

Ohio App.3d 611, 615, 645 N.E.2d 806, 809 (Ohio Ct. App. 1994).

Since this matter is currently before the Court on a motion to dismiss, it is

not surprising that neither party has presented any extrinsic evidence of what the

parties intended at the time they entered into the License Agreement. They may

choose to further explore that issue during discovery. At this juncture, however,

there is no need for the Court to resolve the ambiguity inherent in the phrase "the

state where action [is] authorized." Defendant has not moved to dismiss Plaintiffs'

breach of contract claims, and the choice-of-law provision contained in the 1989

License Agreement is simply not broad enough in scope to encompass Plaintiffs'

quasi-contract and tort claims.

---

Plaintiffs note, however, this choice-of-law provision is extremely limited in scope.
Since the "adequacy of consideration exchanges by the parties" is not at issue in
this case, this modification to the original choice-of-law provision contained in the
1989 License Agreement is inapplicable.

16

The provision at issue states only that "*[t]his Agreement* shall be governed and construed in accordance with the laws of [Ohio or Pennsylvania]." Ex. 1 to Compl., at ¶ 17(G) (emphasis added). This provision obviously governs breach of contract claims; however, it says nothing about which state's law is to govern the extra-contractual rights and duties of the parties. *See Caton v. Leach*, 896 F.2d 939, 943 (5th Cir. 1990) (holding that a choice-of-law provision stating that "[t]his agreement shall be construed under the laws of the State of California" was not broad enough to encompass tort claims and quasi-contract claims). Because Plaintiff's quasi-contract and tort claims fall outside the scope of the choice-of-law provision, the Court must apply Ohio's conflict-of-law rules to determine which state's law governs these claims. This will be addressed below.

### ii)   1995 Agency Agreement

The November 28, 1995, Agency Agreement does not contain a "Governing Law" provision within the body of the agreement itself but a sentence immediately before the signature block states, "[i]n witness thereof, intending to be legally bound according to the laws of the State of Pennsylvania, the parties have executed this Agreement on the dates indicated below their respective signatures." Ex. 3 to Compl. Based on this statement, Defendant urges the Court to find that all claims arising out of the Agency Agreement are governed by Pennsylvania law.

Plaintiffs, however, argue that this language is not an enforceable "governing law" provision, but rather standard boilerplate referencing nothing more than the

17

parties' intent to enter into a legally binding contract, as that term is defined under Pennsylvania law. They note that, in contrast to the 1989 License Agreement, this language appears outside the numbered articles and provisions of the Agency Agreement, and is not labeled as a "Governing Law" provision.

Assuming *arguendo* that this is, in fact, a choice-of-law provision, the Court again finds that this language is ambiguous since it is subject to more than one reasonable interpretation. The parties clearly intended to enter into a contract that would be legally binding under Pennsylvania law. However, it is not clear that they also intended the 1995 Agency Agreement to be construed in accordance with the laws of Pennsylvania or that they intended all claims arising out of the Agreement to be governed by Pennsylvania law.

Again, quite understandably, the parties have not yet presented any extrinsic evidence concerning their intent but, as before, the Court need not resolve the ambiguity right now. Defendant has not moved to dismiss the breach of contract claim and, in the Court's view, the scope of this provision is too narrow to encompass Plaintiffs' quasi-contract and tort claims arising out of the 1995 Agency Agreement.

In short, since there is no choice-of-law provision that governs any of the claims at issue in the pending motion, the Court must resort to an analysis of Ohio's conflict-of-law rules to determine whether Ohio or Pennsylvania law applies to these claims.

### b. Conflict-of-Law Analysis

"A court must conduct conflict of laws analysis only if there is an actual conflict between local law and the law of another jurisdiction." If there is no conflict, Ohio law is to be applied. *The Andersons, Inc. v. Consol, Inc.*, 185 F. Supp.2d 833, 836 (N.D. Ohio 2001). If there is a conflict, it is resolved in accordance with the Restatement of the Law of Conflicts. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-42, 474 N.E.2d 286, 288 (Ohio 1984).

The *contractual* (and quasi-contractual) rights and duties of the parties are generally governed by the law of the state where the contract is to be performed since the "place of performance bears the most significant relationship to the contract." *Schulke*, 6 Ohio St.3d at 438, 453 N.E.2d at 685-86. *See also Restatement (2d) of Conflict of Laws* § 188 (1971) (stating that factors to be considered in determining which state has the most significant relationship to the transaction and the parties include the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, place of incorporation and place of business of the parties).

In this case, the contracts at issue were to be performed in Ohio. Plaintiff Joy Brush is domiciled in Ohio, and Plaintiff MVMHS is incorporated in Ohio and has its principal place of business here. Ohio is also where the subject matter of the contract was located. Plaintiffs were licensed to conduct exams in Ohio.

19

Although Defendant is incorporated in Pennsylvania, Ohio has the most significant relationship to the transactions at issue. Therefore, in case of a conflict of law, Ohio law will apply to Plaintiffs' quasi-contract claims.

*Tort* claims are generally governed by the law of the place of injury, unless another state has a more significant relationship to the lawsuit. Factors to be considered in determining which state has the most significant relationship to the lawsuit include the place of the injury, the place where the conduct causing the injury occurred, the domicile, place of incorporation and place of business of the parties, and the place where the relationship between the parties is located. *Morgan*, 15 Ohio St.3d at 342, 474 N.E.2d at 289 (citing *Restatement (2d) of Conflict of Laws* §§ 145, 146 (1971)).

In this case, the place of the injury is Ohio, and the conduct causing the injury occurred in Ohio. Plaintiffs allege that ExamOne opened its own corporate offices to perform paramedical exams within Plaintiffs' licensed territory in Ohio, and systematically "stole" Plaintiffs' clients. Again, although Defendant is incorporated in Pennsylvania, Pennsylvania does not have a more significant relationship to the lawsuit. Therefore, in case of a conflict of law, Ohio law will also apply to Plaintiffs' tort claims.

### 2.    Claims Duplicative of Breach of Contract Claims

Having determined the choice-of-law issue, the Court now turns to the substance of Defendant's alternative arguments for dismissal. Defendant first

20

urges the Court to dismiss many of Plaintiffs' claims as duplicative of the breach of contract claims.

### a. Declaratory Judgment Claim

In their First Claim for Relief, Plaintiffs seek a declaration that the 1989 License Agreement and other related agreements attached to the Complaint remain valid and enforceable. Compl. ¶¶57-58.

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal law governs this claim. The Court has discretion to decide whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The following factors should be considered:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004).

21

Defendant argues that Plaintiffs' claim for declaratory relief should be dismissed because the relief sought in connection with that claim is duplicative of Plaintiffs' breach of contract claims, and because Plaintiffs have an adequate remedy at law. According to Defendant, the first, second and fifth factors weigh against entertaining this claim.

Plaintiffs concede that a declaration that the various agreements are enforceable would not settle the controversy. They argue, however, that it would be useful for determining whether Plaintiffs can proceed on a breach of contract theory or must instead pursue the quasi-contractual and tort theories that have been pled in the alternative. Plaintiffs also maintain that there is no better alternative remedy.

In the Court's view, this is not an appropriate case in which to entertain a declaratory judgment action. Declaratory judgment is typically sought before an injury-in-fact has occurred. *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "It gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." It thereby minimizes "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §2751 (3d ed. 1998).

22

Here, Plaintiffs' claims have already ripened into a cause of action, and Plaintiffs have sought damages under several alternative theories. Although the existence of other remedies does not preclude a declaratory judgment action, it is one of the factors that must be considered in determining whether declaratory judgment is appropriate. In this case, a declaratory judgment concerning the validity and enforceability of the various agreements would not settle the entire controversy. Regardless of how the Court resolved that question, Plaintiffs would presumably still pursue their other causes of action, seeking monetary damages either in contract or in tort. The validity and enforceability of the contracts have already been placed at issue, and Plaintiffs' claim for damages is a better and more effective remedy.

The Court therefore agrees with Defendant that the declaratory judgment claim is duplicative and should be dismissed. *See Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp.2d 837 (E.D. Mich. 2003) (dismissing declaratory judgment claim because relief sought was redundant in light of relief sought for breach of contract).

### b.     Quasi-Contract Claims and Tort Claims

Defendant also argues that because there is a valid and enforceable written contract, Plaintiffs cannot also maintain actions for breach of implied contract, promissory estoppel, or unjust enrichment. *See Cook v. Home Depot U.S.A., Inc.*, No. 2:06-cv-571, 2007 WL 710220, at \*8 (S.D. Ohio Mar. 6, 2007) ("Ohio law

23

does not allow parties to 'seek damages under quasi-contractual theories of recovery' such as a claim of unjust enrichment when a contract governs the relationship."); *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (interpreting Pennsylvania law, and holding that a plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties).

Likewise, Defendant argues that Plaintiffs' claims for breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contractual and business relationships, and conversion are barred because "under Ohio law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). *See also Brown & Brown, Inc. v. Cola*, 745 F. Supp.2d 588, 619 (E.D. Pa. 2010) (noting that under Pennsylvania's "gist of the action" doctrine, a plaintiff is generally precluded from recovering in tort for claims arising from breach of contract). Defendant maintains that because Plaintiffs have failed to allege the existence of any legal duty arising outside of the obligations contained in the contract, and because the conduct underlying the tort claims falls within the scope of the alleged contractual relationship, Plaintiffs' tort claims fail as a matter of law.

Defendant also argues that, under Ohio law, "[t]here is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim. Rather, good faith is part of a contract claim and does not stand alone."

24

*Northeast Ohio College of Massotherapy v. Burek*, 144 Ohio App.3d 196, 204,

759 N.E.2d 869, 875 (Ohio Ct. App. 2001) (internal citation and quotation

omitted). *See also JHE, Inc. v. Southeastern Penn. Transp. Auth.*, No. 1790, 2002

WL 1018941, at *5-7 (Pa. Com. Pl. May 17, 2002) (noting that Pennsylvania does

not recognize a tort claim for bad faith, and that separate causes of action cannot

be maintained for breach of contract and breach of the covenant of good faith,

"even in the alternative.").[4]

   Plaintiffs concede that if there are valid and enforceable contracts, the quasi-

contractual claims and tort claims are not viable. Plaintiffs argue, however, that

although they believe that the contracts at issue are valid and enforceable, it is not

clear at this point whether Defendant concedes this point. In the event that the

Court eventually finds that one or more of the contracts is invalid or unenforceable,

Plaintiffs have pleaded quasi-contractual claims and tort claims in the alternative.

   Plaintiffs correctly note that Federal Rule of Civil Procedure 8(d)(3)

specifically provides that a party may state as many claims as it has, regardless of

consistency. *See Concheck v. Barcroft*, No. 2:10-cv-656, 2011 WL 3359612, at

*8 (S.D. Ohio 2011) (refusing to dismiss quasi-contract claims because if the

contract is ultimately deemed unenforceable, plaintiff may be able to succeed on

alternate theories of recovery); *Jent v. BAC Home Loans Servicing, LP*, No. 1:10-

---

   [4] To the extent that Pennsylvania law may be deemed inconsistent with
Ohio law on this issue, Ohio law governs.

cv-783, 2011 WL 2971846, at *4 (S.D. Ohio July 21, 2011) (rejecting

defendant's claim that tort claims cannot be brought when a contract cause of

action exists, and noting that under Rule 8(d), plaintiffs "may plead contract and

tort causes of action in the alternative"); *Lugo v. Farmers Pride, Inc.*, 967 A.2d

963, 969-70 (Pa. Superior Ct. 2009) (plaintiff may plead alternative causes of

action for breach of contract and unjust enrichment "to allow recovery under the

latter theory where an express contract cannot be proven"). The Court therefore

finds that there is no basis for dismissing the quasi-contractual claims or tort claims

at this juncture.

### 3.    Preemption

Defendant next argues that Plaintiffs' common law claims of tortious

interference and conversion must be dismissed because they are preempted by the

Uniform Trade Secrets Act ("UTSA"), adopted by Ohio and Pennsylvania.  With

limited exceptions, UTSA displaces "conflicting tort, restitutionary, and other laws

. . . providing civil remedies for misappropriation of a trade secret."  Ohio Revised

Code § 1333.67(A); 12 Pa. Cons. Stat. §5308. This statute "has been interpreted

to bar claims which are based entirely on factual allegations of misappropriation of

trade secrets." *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp.2d 722,

730 (N.D. Ohio 1999). *See also Firstrust Bank v. DiDio*, No. 200, 2005 WL

2001105 (Pa. Com. Pl. July 29, 2005).

Plaintiffs acknowledge that they cannot recover under UTSA and also recover for tortious interference and conversion. They argue, however, that they have pled the common law claims in the alternative, so that they have an avenue of recovery in the event the Court determines that their business contact information is not a "trade secret." Plaintiffs maintain that until that issue is decided, the Court cannot decide whether the claims are preempted.

The Court rejects this argument. UTSA preempts all claims based on misappropriation of information even if that information does not rise to the level of a "trade secret." In *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp.2d 702 (N.D. Ohio 2009), it was noted that "courts have generally found that the UTSA preempts 'all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status.'" *Id.* at 720 (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp.2d 649, 655 (E.D. Tenn. 2004)). Accordingly, it is not necessary for the Court to determine whether the information in question constitutes a "trade secret" before considering whether the common law claims are preempted. *Id.* at 721-22.

The relevant question is whether the facts supporting the common law claim are solely dependent on the same operative facts as the UTSA claim. *Id.* at 721. If they are, then the claim is preempted. However, "if the common-law claim possesses an 'independent factual basis' separate from the factual allegations

27

establishing a UTSA claim, then the portion of the claim supported by an independent factual basis survives preemption." *Office Depot, Inc. v. Impact Office Prods., LLC*, -- F. Supp.2d --, 2011 WL 4452397, at *7 (N.D. Ohio 2011) (quoting *Allied Erecting*, 649 F. Supp.2d at 724)).

Plaintiffs' UTSA claim alleges that Defendant has used "listings of names, addresses, or phone numbers" of Plaintiffs' business contacts to establish its own paramedical offices to compete directly with Plaintiffs. Plaintiffs further allege that this information constitutes "trade secrets." Compl. at ¶¶91, 94.

Plaintiffs' claim of conversion, set forth in the Eleventh Claim for Relief, relies entirely on the same operative facts. Plaintiffs allege that Defendant wrongfully took Plaintiffs' personal property, the "names, addresses, or phone numbers of Plaintiffs' business contacts." Compl. at ¶112. The Court therefore finds that Plaintiffs' conversion claim is preempted by UTSA and must be dismissed with prejudice.

The same cannot be said with respect to the tortious interference claims. In the Ninth Claim for Relief (Tortious Interference with Business Relationships), Plaintiffs allege that Defendant was aware of Plaintiffs' business relationships with various insurance agencies, and purposely interfered with those relationships "by hindering and/or preventing Plaintiffs from doing business with these relations." Compl. ¶¶100-103. In the Tenth Claim for Relief (Tortious Interference with Contractual Relationships), Plaintiffs allege that Defendant "purposely interfered

28

with Plaintiffs' contracts with their independent agent examiners, nurses, and physicians by requiring them to utilize a central scheduling office and otherwise dictating where, when, and how they completed the contracted paramedical examinations." Compl. ¶106.

The facts alleged in these two claims have an independent factual basis separate from the factual allegations supporting the UTSA claim. They allege far more than the wrongful use of clients' contact information. The Court, therefore, finds that the tortious interference claims are not preempted by UTSA.

## 4. Adequacy of Pleading

### a. Promissory Estoppel

Defendant also argues that Plaintiffs' claim of promissory estoppel fails to withstand the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To succeed on a promissory estoppel claim, a party must show (1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Current Source, Inc. v. Elyria City School Dist.* (2004), 157 Ohio App.3d 765, 2004-Ohio-3422, 813 N.E.2d 730, at ¶ 31.[5]

Defendant maintains that Plaintiffs have failed to allege a "clear and unambiguous promise." Plaintiffs alleged that Troy Hartman of ExamOne

---

[5] These elements are essentially the same under Pennsylvania law. *See Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. 1997).

29

"promised that all WWHS Inc. contracts with Plaintiffs would be honored." Compl.

¶37. According to Defendant, this allegation is too broad and vague because there is no allegation: (1) that Hartman was qualified to make such a promise; or (2) that he made any express promise at all.

The Court disagrees on both accounts. Although Plaintiffs did not expressly state that Hartman was qualified to make such a promise, such a fact can be inferred by Plaintiffs' additional allegation that, "ExamOne promised by and through its agents and/or employees to honor Plaintiffs' contracts with WWHS Inc." *Id.* at ¶73. Moreover, Hartman's statement that "all WWHS Inc. contracts with Plaintiffs would be honored" is an express promise. The Court therefore concludes that Plaintiffs' allegations are sufficient to state a claim of promissory estoppel.

### b. Tortious Interference Claims

Finally, Defendant argues that Plaintiffs have failed to allege all essential elements of claims for tortious interference with business relationships and tortious interference with contractual relationships. Under Ohio law, in order to recover for a claim of tortious interference with a contractual relationship, "one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), syl. ¶ 2.

30

The elements of a claim of tortious interference with a business relationship are nearly identical. "The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.* (2002), 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶23.[6]

With respect to the tortious interference with contractual relations claim, Defendant maintains that Plaintiffs have not sufficiently alleged the existence of a contract. Defendant argues that the claim should be dismissed because Plaintiffs fail to allege the type, title, substance or term of the alleged "contracts with their independent agent examiners, nurses, and physicians." Doc. #9, at 18 (quoting Compl. ¶ 106). In the Court's view, Plaintiffs' allegations are sufficient to establish the existence of a contract and to put Defendant on notice of the nature of the claim concerning Plaintiffs' contracts with those health care professionals to perform paramedical examinations.

---

[6] Defendant notes that Pennsylvania does not recognize a cause of action for tortious interference with a business relationship, but does recognize one for tortious interference with prospective contractual relations. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529-30 (3d Cir. 1998). Again, to the extent that Pennsylvania law conflicts with Ohio law, Ohio law governs.

Defendant also argues, with respect to both claims, that Plaintiffs have not sufficiently alleged that Defendant interfered with a third party. Section 766 of the Restatement (2d) of Torts, adopted by the Ohio Supreme Court in *Kenty*, 72 Ohio St.3d at 418-419, 650 N.E.2d at 866, provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing *the third person* not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (2d) of Torts § 766 (1979) (emphasis added).

Again, the Court finds that Plaintiffs' allegations of interference with third parties are sufficient. With respect to the business relationships with numerous insurance companies, Plaintiffs have alleged that ExamOne "implemented various centralized scheduling systems known as "Tele-App" which prevented individual insurance companies from directly scheduling paramedical exams with Plaintiffs." Compl. ¶ 43. With respect to the contracts with the health care professionals, Plaintiffs have alleged that ExamOne interfered with those contracts by requiring the health care professionals "to utilize a central scheduling office and otherwise dictating where, when, and how they completed the contracted paramedical examinations." Compl. ¶ 106.

With respect to both claims, Defendant next argues that Plaintiffs have failed to allege a lack of justification or privilege. Plaintiffs admit that the Complaint contains no express statement concerning a lack of justification or privilege. They

32

argue, however, that the impropriety of Defendant's interference with the contracts and business relationships is implicit in the factual allegations of the Complaint. The Court agrees. The absence of an express allegation of lack of justification is not fatal. The Sixth Circuit has held that, "[t]o survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct *or inferential* allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (emphasis added). Plaintiffs have alleged that the License Agreement granted an *exclusive* right to conduct paramedical exams on Defendant's behalf in several Ohio counties. Compl. ¶17. It therefore can be inferred that Defendant acted improperly and without privilege when it allegedly stole Plaintiffs' clients.

Finally, Defendant argues that Plaintiffs have alleged "no damages as a result of ExamOne's purported interference." Doc. #9, at 19. This is patently false. Plaintiffs allege that they "have sustained and will continue to sustain in the future injuries and monetary damages in excess of seventy five thousand ($75,000.00)." Compl. ¶¶104, 109. Defendant then maintains that these allegations are too conclusory and are insufficient under *Iqbal*. The Court disagrees. Plaintiffs have presented more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. Based on the allegations in the Complaint, it is plausible to believe that Defendant could be liable to Plaintiffs for damages sustained as a result of Defendant's conduct.

33

The Court concludes that Plaintiffs' allegations of tortious interference with business relationships (Ninth Claim for Relief) and tortious interference with contractual relationships (Tenth Claim for Relief) are sufficient to withstand Defendant's Motion to Dismiss.

## IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Doc. #9) is SUSTAINED IN PART and OVERRULED IN PART. The Motion is OVERRULED with respect to Plaintiffs' Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Claims for Relief.

The Court declines to exercise its discretion to adjudicate Plaintiffs' First Claim for Relief (Declaratory Judgment). That claim is therefore DISMISSED WITHOUT PREJUDICE. Because Plaintiffs' Eleventh Claim for Relief (Conversion) is preempted by UTSA, it is DISMISSED WITH PREJUDICE.[7]

Date: February 6, 2012

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[7] To the extent that Plaintiffs have also requested leave to amend any claims found lacking, the Court overrules Plaintiffs' request as futile.